UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                :

    - v. -                                 :   SEALED INDICTMENT

JOSEPH RUFFALO,                         :   **15 CRIM 291**
   a/k/a "Joseph Macaluso,"

              Defendant.          :

- - - - - - - - - - - - - - - - - - x

COUNT ONE

(Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

Background

1.   Company-1 was a company used and controlled by
JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, to
obtain advance fees from individuals who were in search of
funding for business projects.

2.   Company-2 was a company used and controlled by
JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, to
obtain advance fees from individuals who were in search of
funding for business projects.

3.   Company-3 was a company used and controlled by
JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, to
obtain advance fees from individuals who were in search of
funding for business projects.

*JUDGE CAPRONI*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/13/15

1

4.    Company-4 was a company used and controlled by JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, to obtain advance fees from individuals who were in search of funding for business projects.

5.    Company-5 was a company used and controlled by JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, to obtain advance fees from individuals who were in search of funding for business projects. (Company-1, Company-2, Company-3, Company-4, and Company-5 are referred to herein collectively as the "Ruffalo Companies.")

<u>The Scheme to Defraud</u>

6.    Among the means and methods by which JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, and others known and unknown, knowingly and willfully participated in a conspiracy to defraud individuals seeking funding for business projects were the following:

a.    RUFFALO incorporated, used, controlled, or otherwise helped to form the Ruffalo Companies.

b.    RUFFALO, and others working with him, on various occasions posed as executives, brokers, underwriters, lenders, and/or financiers from one or more of the Ruffalo Companies in communications with individuals who were in search of funding for those individuals' business projects (the

2

"Victims"). At times, RUFFALO used a fake identity when communicating with Victims.

c.   RUFFALO, or others working with him, represented to Victims that one of the Ruffalo Companies would serve as the underwriter for the Victims' funding request, and a different Ruffalo Company would serve as the source of funding for the Victims' request.

d.   RUFFALO concealed the fact that all of the Ruffalo Companies were controlled by RUFFALO.

e.   RUFFALO, or others working with him, requested that Victims transfer money by wire as advance fees, purportedly to cover the due diligence and other costs incurred by the Ruffalo Company represented to the Victim to be responsible for the underwriting related to the Victims' requests for funding (the "Initial Fee Payment").

f.   In addition, RUFFALO, or others working with him, requested that Victims transfer an additional amount of money by wire as advance fees, purportedly to fund the "senior portion" of the requested funding, and to cover costs incurred by the Ruffalo Company represented to be responsible for funding the Victims' requests (the "Senior Portion Payment"; the "Initial Fee Payment" and the "Senior Portion Payment" are referred to collectively herein as the "Advance Fee Payments").

3

g.     RUFFALO, or others working with him,
falsely represented to Victims that all Advance Fee Payments
would be fully refunded in the event:  (i) the Ruffalo Companies
did not perform any of the promised services in connection with
the Advance Fee Payments; (ii) a pre-funding term sheet was not
issued; or (iii) any rates, terms, or stipulations varied
materially from the initial representation made by the Ruffalo
Companies.

h.     RUFFALO, or others working with him, also
fraudulently represented to Victims that the Senior Portion
Payment would be held in escrow until the pre-funding term sheet
was issued.

i.     With respect to some Victims, after
receiving Advance Fee Payments from the Victim, RUFFALO, or
others working with him, cut off all communication with the
Victim without providing the requested funding and without
returning the Advance Fee Payments.

j.     With respect to some Victims, after
receiving Advance Fee Payments from the Victim, RUFFALO, or
others working with him, refused the requested funding for false
and/or pretextual reasons, without returning the Advance Fee
Payments.

k.     RUFFALO, or others working with him,
fraudulently represented to Victims that the Ruffalo Companies

4

had the capacity to fund the Victims' requested loans, when in truth and in fact, RUFFALO and others working with him knew that the Ruffalo Companies did not have such capacity.

l.    RUFFALO, or others working with him, also sometimes stated that an accounting report would be provided to Victims detailing how the Advance Fee Payments were spent.   In many instances, such an accounting report was never provided, or, when it was provided, it included false representations regarding the work performed by the Ruffalo Companies.

m.    Many of the wire transfers made by the Victims to the Ruffalo Companies were made from outside the State of New York into bank accounts of one or more of the Ruffalo Companies located within the Southern District of New York.

n.    RUFFALO, or others working with him, sometimes met with Victims to discuss the Victims' funding requests in "virtual" offices in Manhattan, New York.

o.    RUFFALO furthered the conspiracy by serving as the signatory on and withdrawing money from the bank accounts of Company-1 and Company-2 (the "Bank Accounts"), into which accounts Advance Fee Payments were wire transferred by Victims.

p.     RUFFALO was designated as the Managing Member of Company-1 and Company-2, and received statements for the Bank Accounts at his home address.

q.     As an example of how RUFFALO's fraudulent scheme worked:

i.     In or about July 2009, a Victim, who was the president of a company based in Wyoming ("Victim Company-1") was put in touch with one of the Ruffalo Companies in connection Victim Company-1's efforts to obtain funding for a real estate development.

ii.     In or about July 2009, an individual working with RUFFALO at one of the Ruffalo Companies represented to the president of Victim Company-1 that the Ruffalo Companies had the capacity to fund a loan of up to approximately $10,000,000 for Victim Company-1's real estate development.

iii.     In or about July 2009, an individual working with RUFFALO at one of the Ruffalo Companies instructed the president of Victim Company-1 to wire transfer approximately $25,000 to a bank account of Company-2, which was controlled by RUFFALO.

iv.     In or about July 2009, the president of Victim Company-1 did wire transfer approximately $25,000 to a bank account of Company-2, which was controlled by RUFFALO.

v.    In January 2010, the president of Victim Company-1 requested an accounting report and refund of Advanced Fee Payments from the Ruffalo Companies.

vi.    In April 2010, an e-mail was sent from an account used by an individual working with RUFFALO at one of the Ruffalo Companies to the president of Victim Company-1, which falsely stated, in part, that "your accounting report is being compiled as we speak, and you should receive it by weeks [*sic*] end or early part of next week at the latest."

vii.    In or about May 2010, an e-mail was sent from an account used by RUFFALO to the president of Victim Company-1, concerning the requested accounting report and refund of Advance Fee Payments by Victim Company-1 to the Ruffalo Companies.  The e-mail stated, in part,

> [m]y request to meet with the necessary pool personnel to discuss, complete and consequently bring your matter to a close has become dependent on the availability of a key person, I am being told that party will return this week, I should have a tentative meeting set by Thurs, I will keep you informed as to the date of said meeting.

The e-mail was signed "Joseph."  Approximately eight days later, another e-mail was sent from an account used by RUFFALO to the president of Victim Company-1, which stated, "I am making headway with your situation, I will keep you posted."  RUFFALO then cut off all communication with Victim Company-1.

7.    In furtherance of and to conceal the fraudulent conspiracy, in or about March 2013, JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, falsely stated to a Special Agent of the Federal Bureau of Investigation that Company-4 had $200 million available to lend, and that Company-5 had $100 million available to lend.

8.    As a result of the fraudulent scheme executed by JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, and others working with him, Victims were defrauded out of millions of dollars in Advance Fee Payments.

<u>Statutory Allegations</u>

9.    From at least in or about March 2007, up to and including in or about March 2013, in the Southern District of New York and elsewhere, JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, to wit, RUFFALO and others known and unknown defrauded individuals who were in search of funding for business projects from the Ruffalo Companies.

10.   It was a part and object of the conspiracy that JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and

8

property by means of false and fraudulent pretenses,
representations, and promises, would and did transmit and cause
to be transmitted by means of wire and radio communications in
interstate and foreign commerce, writings, signs, signals,
pictures, and sounds for the purpose of execucing such scheme
and artifice, in violation of Title 18, United States Code,
Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

(Wire Fraud)

The Grand Jury further charges:

11.   The allegations contained in paragraphs 1 through
8 of this Indictment are repeated and realleged as if fully set
forth herein.

12.   From at least in or about May 2010, up to and
including in or about March 2013, in the Southern District of
New York and elsewhere, JOSEPH RUFFALO, a/k/a "Joseph Macaluso,"
the defendant, knowingly, having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, and attempting to do so, did
transmit and cause to be transmitted by means of wire
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of

executing such scheme and artifice, to wit, RUFFALO defrauded individuals who were in search of funding for business projects from the Ruffalo Companies, and in connection therewith, RUFFALO transmitted and caused to be transmitted interstate electronic mail, telephone calls, and wire transfers of funds.

(Title 18, United States Code, Sections 1343 & 2.)

## FORFEITURE ALLEGATION

13. As a result of committing the wire fraud offenses alleged in Counts One and Two of this Indictment, JOSEPH RUFFALO, a/k/a "Joseph Macaluso," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses alleged in Counts One and Two.

## SUBSTITUTE ASSET PROVISION

14. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

        c.    has been placed beyond the jurisdiction of the Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property described above.

        (Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

FOREPERSON

PREET BHARARA
United States Attorney /pmk

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOSEPH RUFFALO,
a/k/a "Joseph Macaluso,"

Defendant.

INDICTMENT

15 Cr. ____

(18 U.S.C. §§ 2, 1343, 1349.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.

3/1̶3̶/15 - Filed Sealed Indictment.
No       A/W issued
                    Judge Peck
                    USMJ